Crossley v. St. Louis, Iron Mount. & S. Ry. Co., 199 Ill. App. 195.

2. ASSIGNMENTS, § 3*—*when assignment of wages by attorney in fact under power of attorney invalid.* An employee cannot by an attorney in fact authorized by a power of attorney entered into before a contract of employment was made assign his wages to be earned under such contract of employment.

3. PRINCIPAL AND AGENT, § 122*—*when acts of special agent valid.* Where a principal authorizes a special agent to perform an act in the name of the principal upon certain conditions, it devolves upon the agent to show those conditions were in existence at the time of the performance of the act, or afterwards waived.

4. ASSIGNMENTS, § 3*—*when assignment of wages invalid.* Where a special agent is only authorized to execute an assignment of wages under a power of attorney at a time when the principal was indebted to the assignee and no indebtedness existed at the time of the assignment, such assignment is invalid.

F. P. Crossley, Appellee, v. St. Louis, Iron Mountain & Southern Railway Company, Appellant.

(Not to be reported in full.)

Appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 17, 1916.

### Statement of the Case.

Action by F. P. Crossley, plaintiff, against St. Louis, Iron Mountain & Southern Railway Company, defendant, for damages for negligence in shipping and handling of stock, including delay in shipment to destination. From a judgment for plaintiff, defendant appeals.

Plaintiff, being desirous of shipping some cattle, forty-one head, from Pine Bluff, Arkansas, to East St. Louis, Illinois, made application to the agent of de-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

fendant at Pine Bluff, Arkansas, for a car, and was advised that the cattle would be shipped at about noon of September 11th. The cattle were loaded but not shipped out until 6:20 in the evening, at which time they were shipped to Little Rock, Arkansas, and there the car was transferred and put on the rear of another train of about eighty cars and arrived at Hoxie at 3:40 of the next morning of the 12th, where the cattle were unloaded for rest. Plaintiff was advised by the yard-master that his cattle would be taken out of there about eight o'clock in the morning. Instead of unloading them immediately they were placed upon a side track and allowed to remain in the car until about eight or nine o'clock, when they were then unloaded into the stock pens. The stock pens were muddy and in bad condition and the cattle were kept there for twenty-nine hours. During that day several trains, as claimed by plaintiff, passed going to St. Louis, but plaintiff claimed that he was not able to get his cattle attached to any one of those trains because of the fact that the yardmaster who they claimed had to arrange to conduct them with other trains was out of town, but later on they were shipped out from Hoxie to East St. Louis and arrived at the stock yards about nine o'clock on the morning of the 14th of September, and it was claimed they were on the road for about sixty-six hours. There was evidence tending to show that during a portion of this time the cattle were roughly handled; that in shipping, the car was placed in a position at the rear of the train so that in starting and stopping the cattle were thrown from their feet and many of them bruised and injured, and that they were not well cared for while in the stock yards at Hoxie, and on arriving at East St. Louis were in very gaunt condition and badly bruised, and that the shrinkage was far in excess of that usually sustained by stock, in the making of that shipment. Some of the witnesses placed the shrinkage at one hundred to one hundred

and twenty-five pounds, while they should not have shrunk more than from twenty-five to fifty pounds, if properly cared for in the making of the shipment. It appeared from the evidence that the usual time for the making of a shipment from Pine Bluff, Arkansas, to East St. Louis, Illinois, allowing rest at Hoxie, as provided by statute, would be about thirty-six to thirty-eight hours. The evidence ·of defendant tended to show that the trains that the plaintiff claims passed through Hoxie going to St. Louis were not St. Louis trains and that the car of cattle was taken up by the first train that passed going to St. Louis. The evidence of plaintiff also tended to show that the delay at Pine Bluff caused them to miss connection with the train that should have taken the cattle out from Hoxie on the morning of the 12th, and that such delay was unexplained.

The defendant complained of the following instructions for plaintiff:—"The court instructs the jury that when a railroad company receives live stock for shipment it is the duty of such company to use reasonable diligence to carry and deliver said stock to said destination within a reasonable time."

"The court further instructs the jury that if you find from the evidence that the defendant company sent the cattle in question forward from Hoxie, Arkansas, on the first stock train leaving there after the expiration of the time required by the Federal law for feed and rest, then the defendant would not be liable for any damage to said cattle if not caused by such delay at Hoxie, Arkansas."

L. O. Whitnel and H. L. Browning, for appellant; Edward J. White, of counsel.

John E. Hamlin, S. W. Baxter and J. L. Flannigen, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

## Abstract of the Decision.

1. CARRIERS, § 248*—*when evidence insufficient to establish contract limiting liability.* In an action by a shipper for damages for negligence in the shipping and handling of stock, where plaintiff denied the signing of an offered contract limiting liability and no evidence was produced by defendant that the signature was plaintiff's *held* that the contract was not established.

2. CARRIERS, § 245*—*when shipper may bring action of tort for negligence in shipment of stock.* Where cattle are shipped, the shipper is not required to bring an action on the contract, if one exists, but may, if he choose, bring an action for nonperformance of the duty enforced by law to safely transport and promptly deliver such stock.

3. CARRIERS, § 239*—*when contract relieving from liability for negligence invalid.* A common carrier cannot under the Carmack Amendment, by contract relieve itself from loss to an interstate shipment of property due to its negligence.

4. CARRIERS, § 239*—*when stipulations in contract limiting liability valid.* Stipulations in a contract for an interstate shipment of property under the Carmack Amendment, as to the amount of loss, time for presentation of claim and commencement of suit, are valid.

5. CARRIERS, § 246*—*when stipulations in contract limiting liability matters of defense.* Stipulations in a contract for the interstate shipment of stock limiting the liability of the carrier are matters of defense in an action of tort by the shipper for negligence in transportation, and it is not necessary that plaintiff produce the contract in making out his case.

6. CONFLICT OF LAWS, § 21*—*what law governs interstate shipments.* Interstate shipments are controlled by the Federal laws and the State courts are bound by the construction placed thereon by the Federal courts.

7. CARRIERS, § 248*—*when evidence sufficient to sustain finding that unreasonable delay and carelessness in handling stock proximate cause of injury.* In an action of tort for damages for negligence in transporting an interstate shipment of live stock, evidence *held* sufficient to show unreasonable delay in transportation of, and carelessness in handling, live stock, and that such delay and carelessness was the proximate cause of the injury to the live stock.

8. CARRIERS, § 250*—*when instruction as to diligence in transportation and delivery of interstate shipment of live stock proper.*

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

In an action by a shipper for damages for negligence in transporting an interstate shipment of live stock, an instruction as to the duty of the carrier receiving live stock for shipment to use reasonable diligence to carry and deliver said stock to the destination within a reasonable time, *held* correct.

9. CARRIERS, § 234*—*what is duty of carrier to carry and deliver interstate shipment of live stock.* Where a railroad company receives live stock for interstate shipment, it is its duty to use reasonable diligence to carry and deliver such stock to its destination within a reasonable time.

10. CARRIERS, § 250*—*when instruction on liability for damages for negligence in transportation of live stock erroneous.* In an action of tort for damages for negligence in transporting and handling an interstate shipment of live stock, including delay in delivery to the destination, an instruction that if the jury found that the defendant company sent the cattle forward from the station at which they were unloaded for rest and feed on the first stock train leaving there after the expiration of the time required by the Federal law for feed and rest, then the defendant would not be liable for any damage to such cattle if not caused by such delay at such point, *held* erroneous as ignoring the delay in unloading the cattle at such point, the improper care and feeding of them while there, and also as misleading because assuming that the damage was caused by delay at such point, when there was evidence tending to show damages from other causes.